ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                                )
                                                          )
OSC Solutions, Inc.                                       )   ASBCA No. 63294
                                                          )
Under Contract No. N00189-20-A-0002                       )

APPEARANCE FOR THE APPELLANT:        Frank V. Reilly, Esq.
                                       Oakland Park, FL


APPEARANCES FOR THE GOVERNMENT:      Craig D. Jensen, Esq.
                                       Navy Chief Trial Attorney
                                     Philip T. Rappmund, Esq.
                                       Trial Attorney


OPINION BY ADMINISTRATIVE JUDGE ARNETT ON THE GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION


        OSC Solutions, Inc. (appellant or OSC) filed an appeal from the denial of its
claim involving a Blanket Purchase Agreement (BPA).  Respondent Naval Supply
Systems Command, Fleet Logistics Center Norfolk (the government or the Navy) has
moved to dismiss this appeal pursuant to ASBCA Rule 7(b).  The government asserts
that the Board lacks jurisdiction to address this appeal because 1) it arises out of a
dispute over the terms of a BPA, which is not a contract and, therefore, not subject to
the Contract Disputes Act (CDA); and 2) appellant has failed to allege facts sufficient
to demonstrate that an implied-in-fact contract exists between the parties to confer
jurisdiction under the CDA.


STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION


        1.  On or about May 2, 2019, the government issued Solicitation
No. N0018919R0041 for a BPA to provide maintenance, repair, and operations
supplies and materials for sale in "shop stores" at four Naval Facility Public Works
Department locations in the Northeastern United States (R4, tab 7).

        2.  The Solicitation identified a list of services and products that "can be
ordered under this BPA" and stated that the "BPA does not obligate any funds" (R4,
tab 7 at 541).

        3.  In response to the Solicitation, OSC submitted a price proposal that included
a table to reflect the monthly and total service price for each of the four locations.
OSC's proposal stated a cost of $0 as the monthly and total service price for each

location and included the following note under the table: "Store service is included within the price of the products therefore there are no additional charge for services." (R4, tab 8 at 599)

4. On or about August 2, 2019, the government indicated to OSC that it would conduct exchanges and request final proposal revisions from offerors. It identified weaknesses in OSC's proposal, including noting that OSC's price proposal "must contain separately priced services." (R4, tab 9 at 605-06)

5. In response, OSC provided a seven-page letter dated August 2, 2019. To address the government's comment about OSC's price proposal, OSC stated the following:

> OSC is offering the required services to the Navy for no additional charge as they are incidental to the purchasing of the products from our GSA schedule contract. There is therefore no additional charge for OSC to offer the Navy the required services under the contract. Required services are included for no additional charge.[1]

(R4, tab 10 at 613)

6. On January 2, 2020, the government and OSC entered into BPA No. N0018920A0002. The BPA included a base ordering period through January 1, 2021, and four subsequent option years. (R4, tab 2)

7. Paragraph (1) of the BPA states, "The following contract services/products can be ordered under this BPA. All orders placed against this BPA are subject to the terms and conditions of the contract, except as noted below . . ." (R4, tab 2 at 5).

8. Paragraph (3) of the BPA states, "The Government estimates, but does not guarantee, that the volume of purchases through this agreement will be $70,070,404.09" (R4, tab 2 at 5).

9. Paragraph (4) of the BPA states, "This BPA does not obligate any funds. Funds will be obligated by placement of calls under Federal Acquisition Regulation Subpart 8.4 entitled 'Federal Supply Schedules', or the use of a Government wide purchase card issued under the Federal Acquisition Regulation 13.303 entitled 'Blanket Purchase Agreements', and agency regulations" (R4, tab 2 at 5).

---

[1] OSC reiterated this statement in an email to the government on August 8, 2019 (R4, tab 11 at 615-16).

2

10. Paragraph (11) of the BPA states, "Best Value: The Fleet Logistics Center Norfolk, Contracting Office, and OSC Solutions, enter into this blanket purchase agreement with the intent of ensuring the best value is achieved for the Navy when acquiring required materials and services as detailed in the PWS" (R4, tab 2 at 6).

11. On December 31, 2020, the government exercised Option Period 1, which extended the BPA to January 1, 2022 (R4, tab 5 at 112-13).

12. In July 2021, OSC submitted an invoice requesting payment of $1,013,729.28 for "unabsorbed store services direct costs." OSC indicated that it had discounted its store service costs based on the estimated volume of sales indicated in the BPA, which had not been realized (R4, tab 12 at 619).

13. In October 2021, OSC requested a "resolution" of the unpaid invoice indicating that it desired to cancel its obligation under the BPA effective October 29, 2021, if the government would not pay the invoice (R4, tab 13 at 627).

14. On November 19, 2021, the government indicated its intent not to exercise the next option period (R4, tab 12 at 622-23). As a result, the BPA expired on December 31, 2021.

15. On November 29, 2021, the contracting officer stated the government's position that there was "no basis for the payment of OSC's labor service invoices" and indicated that the government did not intend to pay the invoices or modify the BPA "to permit such charges" (R4, tab 13 at 621).

16. On February 17, 2022, OSC filed a certified claim seeking $1,152,858 for store labor services incurred in the performance of the BPA (R4, tab 6). Rather than price the service costs separately, OSC included its store service costs within the cost of its products. OSC asserted that its service costs were not compensated because the government ordered "a small percentage" of the product amount estimated in the BPA, and OSC only received payment for services associated with its products that were ordered. Had the BPA estimate been realized, OSC concluded that it would have been paid in full. (R4, tab 6 at 115-18)

17. On April 18, 2022, the government denied OSC's certified claim (R4, tab 1). The contracting officer concluded that the BPA did not guarantee a particular volume of sales, that the BPA did not impose a contractual obligation upon the government, and that OSC made a business decision not to propose separate pricing for store labor prices since that was specifically identified in the Solicitation and discussed in the exchanges prior to award. The contracting officer noted that OSC elected to include its store service costs within the price of the products stating that "there are no additional charge for services." (R4, tab 1 at 1)

3

18. On June 2, 2022, appellant filed an appeal with the Board seeking $1,153,858[2] for labor service costs it allegedly incurred to staff the four Naval Public Works Department locations under the BPA due to the government's alleged breach of an implied-in-fact contract. Appellant further asserted that the Board has jurisdiction to consider its' claims that arose under orders placed pursuant to the BPA. Accordingly, we find that these assertions are not frivolous.

<u>DECISION</u>

In its motion, the government contends that the Board lacks jurisdiction to decide OSC's claim and should dismiss the pending appeal because OSC's claim does not arise from a contract that is subject to the CDA (gov't mot. at 2). The government asserts that the BPA is not a contract and denies that the circumstances alleged by OSC give rise to an implied-in-fact contract (gov't mot. at 8-9). Appellant contends that it has met the jurisdictional threshold through its "non-frivolous assertion of a contract" (app. resp. at 4). Specifically, appellant asserts an implied-in-fact contract exists because the government required appellant to incur staffing service costs upon award of the BPA, including staffing costs to process competitor's orders, and "that it was implied that OSC would be paid the fair and reasonable value of work performed." Further, Appellant argues that the question of whether a valid contract exists goes to the merits of the appeal and does not affect the Board's jurisdiction over the appeal. (App. resp. at 2, 4)

Under the CDA, the Board possesses jurisdiction to hear appeals "from a decision of a contracting officer . . . relative to a contract made by that department or agency." 41 U.S.C. § 7105(e)(1)(A) The Federal Acquisition Regulation (FAR) 2.101 defines a "contract" as: "[A] mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing." The Board's jurisdiction under the CDA is predicated upon an "express or implied contract" between a contractor and the government. *ASFA Constr. Indus. and Trade, Inc.*, ASBCA No. 57269, 15-1 BCA ¶ 36,034 at 176,004 (citing 41 U.S.C. § 7102(a)). As the proponent of the Board's jurisdiction, OSC bears the burden of establishing jurisdiction by a preponderance of the evidence. *Najmaa Alshimal*, ASBCA No. 62701, 21-1 BCA ¶ 37,872 at 183,899; *see also K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1004 (Fed. Cir. 2015). "The facts supporting jurisdiction are subject to our fact-finding upon a review of the record." *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816 citing *Raytheon Missile Sys.*, ASBCA No. 58011, 13-1 BCA ¶ 35,241 at 173,016.

---

[2] The amount sought in OSC's complaint for $1,153,858 differs by $1,000 from the amount stated in OSC's claim in the amount of $1,152,858.

4

The CDA gives the Board jurisdiction over any express or implied contract for the procurement of property or services. 41 USC § 7102(a)  The Board has jurisdiction to consider a claim seeking payment under an alleged implied-in-fact contract. *Concorde, Inc.*, ASBCA No. 53749, 03-1 BCA ¶ 32,113 at 158,783 citing *Liquid Carbonic*, ASBCA No. 39645, 91-2 BCA ¶ 24,040 at 120,334.  The determination of whether a valid contract exists goes to the merits of the appeal and will not be resolved at this jurisdictional threshold.

In the instant appeal, we found that appellant has made a non-frivolous assertion of a contract sufficient to establish the Board's jurisdiction (SOF ¶ 18). Thus, the Board has jurisdiction over appellant's claim under an alleged implied-in-fact contract theory.

CONCLUSION

The motion to dismiss is denied.

Dated:  January 17, 2023

LAURA J. ARNETT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

5

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63294, Appeal of OSC Solutions, Inc., rendered in conformance with the Board's Charter.

Dated:  January 18, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals